## In re LIPPMAN.

(District Court, E. D. New York. November 29, 1910.)

BANKRUPTCY (§ 136*)—WITHHELD ASSETS—EVIDENCE.

    Evidence *held* to require a finding that a bankrupt had withheld from his trustee assets of the value of $6,028.05 in money and property, for which he was bound to account to his trustee or show cause why he should not be punished for contempt.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 136.*]

In the matter of the bankruptcy proceedings of Morris A. Lippman. Proceedings to compel bankrupt to turn over assets alleged to have been withheld to his trustee. Application granted.

Hastings & Gleason, for trustee.

Otto A. Glasberg, for bankrupt.

CHATFIELD, District Judge. An extended discussion of the facts upon which the present application depends is unnecessary. The bankrupt was found by a special commissioner, when considering the question of insolvency, to have concealed assets to the amount of $3,474. Later the referee, upon substantially the same testimony, when considering the question of compelling the bankrupt to turn over the concealed property, drew the conclusion that $6,539 had not been accounted for. This court, upon the 12th of March, 1909, in confirming the referee's report, and considering whether the bankrupt should be ordered to turn over the amount reported, found several differences in both of the preceding reports, which affected the amounts stated. Upon the court's figures, some $2,908.05 was not accounted for. The expenses of the bankrupt were included by the court at the greatest amount claimed. The bankrupt was, for the purposes of argument, given credit for $1,620 cash supposed to have been lost, $800 diamonds supposed to have been lost, $1,500 for land purchased, and the full amount of difference between the inventories at various times, considered as depreciation in value. In spite of this, as has been said, a shortage of nearly $3,000 existed.

The bankrupt was given an opportunity, before another special commissioner, who had had nothing to do with the case, to explain these discrepancies, and to prove the credits allowed to him for the purpose of argument, but as to which his previous testimony had been held not persuasive. He has utterly failed to furnish any satisfactory proof of the alleged loss of $800 worth of diamonds and $1,620 cash. The testimony as to this loss and these amounts is exceedingly contradictory. He offers a deed of certain lots of land, but does not show the payment of $1,500 therefor. The circumstances connected with his

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

producing the deed are such as to indicate that the property has been acquired subsequently, and at most his testimony shows not more than $800 paid for whatever he bought. He intimates that certain diamonds were left in the hands of one Breslavsky, amounting to $315; but this is categorically denied by Breslavsky, and the evidence in corroboration of Breslavsky is stronger than that for the bankrupt. He explains a stock on hand of $1,200 by saying now that his own and his wife's diamonds were included in this stock. But, if so, his creditors would seem to be entitled to the diamonds, if they were used as a part of the goods upon which credit was secured; and, assuming that his explanation satisfactorily states how they were disposed of, nevertheless the value which he gives for the pieces of jewelry so used (viz., $1,100 to $1,200) is altogether too near the exact amount of his stock in trade to make it credible. A person could not start in business with nine pieces of jewelry, and no other stock, in a store having fixtures worth $1,000, and with over $3,000 in cash in the bank. He also now suggests that $1,500 of money which he had belonged to his wife, as the result of certain earnings on her part in a jewelry installment business which she conducted. Not only is the testimony unpersuasive, but, if any such payment had been made, the time to claim it was when an explanation was demanded as to what became of the money in the bank. The presentation of testimony regarding such a loan, after a contempt proceeding has been started, when at the most the payment would have been preferential if actually made as stated, indicates that the story is an afterthought, and that the property, if ever turned over, was concealed in contemplation of bankruptcy.

The result of the entire matter is that the bankrupt has failed in his attempt to discredit the report of the referee, in its general conclusions, or to free himself from the decision that he has been shown, with reasonable certainty, to have failed to account for, and as well prove, that he has not or did not have in his possession funds and property belonging to the estate, which he should have turned over to the trustee.

The creditors may have an order directing Lippman, within five days, to turn over to the trustee the sum of $6,028.05, or show cause on the first motion day thereafter why he should not be punished for contempt.

$2,908 05, shortage previously found.
1,620 00, money claimed to have been lost.
800 00, diamonds " " " " "
700 00, money claimed to have been paid for land.

$6,028 05